FILED
2012 Nov-01  PM 12:56
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | | |
|---|---|---|
| **AMETRESS COOK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:11-CV-3761-VEH** |
| | ) | |
| **TALLADEGA COLLEGE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## MEMORANDUM OPINION

## I.     INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff Ametress Cook ("Ms. Cook") initiated this lawsuit in the Circuit Court of Talladega County, Alabama, on October 7, 2011, stemming from her expulsion as a student from Defendant Talladega College ("Talladega") without a disciplinary hearing.  (*See* CM/ECF margin entry dated Oct. 28, 2011 ("COMPLAINT . . . Deemed filed 10/7/2011 . . . .")).  Defendants Talladega and Billy C. Hawkins ("Mr. Hawkins"), who Ms. Cook has sued individually and officially in his capacity as President of Talladega, removed her state circuit action to this court on October 28, 2011, pursuant to federal question jurisdiction.  (Doc. 1).

The exact scope of Ms. Cook's collection of federal and state law claims is not entirely clear to the court.  With that disclaimer in mind, Ms. Cook's amended

complaint (Doc. 8) filed on February 15, 2012, lists five separate counts.  Count one indicates that it is for injunctive relief premised upon a deprivation of federal first amendment freedom of speech rights.  (Doc. 8 ¶¶ 1-13).  Count two indicates that it is for mandamus relief premised upon a violation of federal due process rights.  (*Id.* ¶¶ 14-20).

Count three is for breach of duty/negligence arising under Alabama law.  (*Id.* ¶¶ 21-31).  Count four indicates that it is for violations of federal procedural and substantive due process rights as redressed pursuant to 42 U.S.C. § 1983.[1]  (*Id.* ¶¶ 32-37).  Finally, count five is for breach of contract arising under Alabama law.  (*Id.* ¶¶ 38-43).

Pending before the court is Defendants' Motion for Summary Judgment (Doc.

---

[1]  Section 1983 provides in pertinent part:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

42 U.S.C. § 1983.

13) (the "Motion") filed on August 27, 2012.  Defendants filed their supporting brief and evidence at the same time as their  Motion. (Docs. 14, 15).

Ms. Cook responded with her opposing materials on September 17, 2012. (Docs. 16-32).  Defendants followed with their reply (Doc. 33) on September 28, 2012.  Accordingly, the Motion is now under submission, and, for the reasons explained below, is due to be granted.

## II.    BACKGROUND[2]

### A.    Talladega

Talladega is a private liberal arts college located in Talladega County, Alabama.  AF No. 1.1.[3]  As a private college, it is not a state, county, municipal or

---

[2]   Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following underlying facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.

[3]   "AF" stands for admitted fact.  These admitted facts are taken from Defendants' narrative summary of undisputed facts contained in their brief (Doc. 14 ¶¶ 1-32) and Ms. Cook's written responses in which she does not contest any of these facts.  (Docs. 16, 17).  A number following a decimal point corresponds to the particular sentence within the numbered statement of facts.  For example, (AF No. 1.2) would indicate the second sentence of paragraph 1 of Defendants' statement of

other governmental entity or agency of any kind.  AF No. 1.2.

Mr. Hawkins serves as the President of Talladega.  AF No. 2.1.  Mr. Hawkins is not an employee or agent of the State of Alabama, Talladega County, the City of Talladega or any other governmental entity or agency.  AF No. 2.2.

### B.    Ms. Cook Becomes Talladega Student

Ms. Cook became enrolled at Talladega in the fall semester of 2010.  AF No. 4.1.  Prior to coming to Talladega, Ms. Cook had attended Georgia College and State University and Kennesaw State University.  AF No. 4.2.

Ms. Cook attended Talladega in the fall of 2010, spring of 2011 and summer of 2011without experiencing any major problems.  AF No. 5.1.  According to Ms. Cook, she made good grades, served as a residence hall assistant, and ran for student government.  AF No. 5.2.

### C.    Ms. Cook Receives Talladega College Student Handbook

As a student, Ms. Cook received a copy of the Talladega College Student Handbook (the "Handbook").  AF No. 5.3.  As  stated in the Handbook, it "is a compilation of college rules, regulations, policies and procedures pertaining to

---

facts is the subject of the court's citation to the record.   While the parties reference some other facts in their briefs, those have not been included in this background section, as they are immaterial to the court's jurisdictional ruling on summary judgment.

students." AF No. 6.1.  The  Handbook and the policies contained therein are subject to change at the discretion of the college.  AF No. 6.2.  The stated purpose of the Handbook "is to provide students with vital information needed in making decisions relating to college life and in finding answers to common problems and/or concerns relating to matriculation at Talladega College."  AF No. 6.3.

The Handbook does not state that it is a contract between the college and the students, and it is not intended to be a contract between the college and the students. AF No. 7.1.  Students have no ability to negotiate the terms of the handbook and students do not give or receive anything of value in exchange for the handbook.  AF No. 7.2.

### D.    Ms. Cook Begins Sending Anonymous Letters

At the beginning of the fall semester of 2011, Ms. Cook began writing a series of letters to Talladega's Vice-President for Student Affairs, Jacqueline Paddio ("Ms. Paddio").  AF No. 3.1; AF No. 8.1.  All of the letters were sent anonymously under the pseudonym of "TC Jane Doe."  AF No. 8.2.  Prior to sending the letters, Ms. Cook had only one limited interaction with Ms. Paddio and Ms. Paddio had done nothing to her that was objectionable or upsetting.  AF No. 8.3.

Ms. Paddio maintained an office at Seymour Hall as well as a personal residence on campus.  AF No. 9.1; AF No. 9.2.  The first letter Ms. Cook wrote to

Ms. Paddio was hand delivered on August 22, 2011, by Ms. Cook's placing the correspondence in an envelope and slipping it under Ms. Paddio's office door after business hours.  AF No. 10.1.

On the outside page of the letter, it stated, "Thanks for the Support Dean Paddio".  AF No. 10.2.  On the envelope in which the letter was contained was written the e-mail address:   TCDoeJane@gmail.com.   AF No. 10.3.   The correspondence expressed concerns about being bullied, fairness of school elections and dorm assignments.  AF No. 10.4.

On the next day, August 23, 2011, Ms. Cook delivered a similar letter under Ms. Paddio's office door.  AF No. 11.1.  The second letter referenced issues related to students not being allowed to speak to the media, the honors program and the difficulty of transferring from the school.  AF No. 11.2.  The correspondence concluded with the statement "I WISH I COULD TELL YOU MY MIND JUST ONCE . . . FACE TO FACE," and was again signed by TCJaneDoe.  AF No. 11.3.

Ms. Cook delivered another letter under Ms. Paddio's door two days later on August 25, 2011.  AF No. 12.1.  The correspondence identified Ms. Paddio as "THE GREAT DEAN PADDIO" and referred to "THE SNEAKY STUFF THE STUDENT AFFAIRS DEPARTMENT DOES."  AF No. 12.2.

After having three letters placed under her office door after hours over a

four-day period, Ms. Paddio felt as if she was being harassed, and began to have concern about her personal safety.  AF No. 13.1.  Although the letters had not been overtly threatening, she was concerned about the rambling and insulting nature of the letters.  AF No. 13.2.

Ms. Paddio contacted Mr. Hawkins and the Chief of the Talladega College Police Department, Jefferson Walker ("Chief Walker"), about the letters.  AF No. 3.3; AF No. 13.3.  Ms Paddio also asked Chief Walker to authorize additional security to monitor outside of her office.  AF No. 13.3.

When Ms. Cook noticed that Talladega police officers were providing security to Ms. Paddio's office, she stopped hand delivering letters and began sending them through the intra-campus mail system.  AF No. 14.1.  Ms. Cook believes that the fourth letter to Ms. Paddio was sent over the weekend of August 26, 2011, through August 28, 2011.  AF No. 14.2.  The letter included the following statement: "I WAS OVERJOYED TO HEAR OF THE STEP UP ON YOUR OFFICE SECURITY. . . . TO (sic) BAD YOU LIVE ON CAMPUS."  AF No. 14.3.

Upon receipt of the fourth letter, Ms. Paddio's concern for her own safety was greatly increased.  AF No. 15.1.  More specifically, she interpreted the mention of increased office security and the reference to the location of her residence on campus as a direct threat against her.  AF No. 15.2.  Ms. Paddio continued to forward the

7

letters to Mr. Hawkins and Chief Walker.  AF No. 15.3.

The next letter from Ms. Cook to Ms. Paddio also was delivered by campus mail and it stated among other comments, "OH BY GOD HOW I PRAY FOR THIS CAMPUS AS IT HEADS FOR DISTRUCTION (sic) . . . SO I GUESS ITS UP TO ME AND GOD. . . . I'M TRAPPED HERE NO PARENTS, NO SUPPORT, NO HOPE, NO ANYTHING. . . ALL I HAVE IS FAITH THAT ONE DAY THE VOICE OF CHANGE WILL RAISE AGAINST THIS MONSTER CALLED THE ADMINISTRATION.  I AM THE CAPTAIN OF MY OWN FATE, AND GOD IS THE PROTECTOR OF MY SOUL. I AM DAVID AND THIS MONSTER IS GOLIATH.  AND ALL I HAVE IS MY VOICE.  SO I AM FORCED TO USE IT. . . . AND THE VOICE OF THE ENSLAVED WILL SCREAM SO LOUD, THAT WE WILL SURELY HEAR FREEDOM RING."  AF No. 16; (Doc. 15-4 at 54).

The religious remarks, including the mention of David, who slew Goliath, and the references to the destruction of campus caused great concern to Ms. Paddio and Mr. Hawkins.  AF No. 17.1.  Based upon the tone of the letters, they became worried over not just for the safety of Ms. Paddio, but for the safety of other faculty and staff and of the students of Talladega.  AF No. 17.2.

Ms. Cook delivered another letter to Ms. Paddio by campus mail requesting a number of actions and ending with the quoted language, "WHERE THERE IS

POWER, THERE IS RESISTANCE."  AF No. 19.

Mr. Hawkins received a letter from Ms. Cook (*i.e.*, TCJaneDoe) as well during this time frame.  AF No. 18.1.  The body of the letter stated: "YOUR (sic) ARE SO WEAK MINDED YOU DON'T RELIZE (sic) THE INJUSTICE ALL AROUND YOU.  ASK DEAN PADDIO ABOUT ME."  AF No. 18.2.

### E.    Chief Walker Begins Investigation

The six letters to Ms. Paddio and one letter to Mr. Hawkins were delivered between August 22, 2011, and September 5, 2011.  AF No. 20.1.  Chief Walker and his department began investigating to try to determine the identity of the letter writer.  AF No. 20.2.  Based upon the number of letters and the language of the letters, Chief Walker believed that the conduct of the letter writer could constitute criminal activity under several statutory code sections.  AF No. 20.3.

In particular, Chief Walker was concerned because the communications were repetitive, harassing in nature and threatening.  AF No. 20.4.  Moreover, Ms. Paddio remained alarmed by the letters and concerned for her personal safety.  AF No. 20.5.

### F.    Ms. Cook Sends Anonymous Electronic Communications

On September 6, 2011, Ms. Cook sent Ms. Paddio an e-mail message from the e-mail account, tcdoejane@gmail.com.  AF No. 21.1.  In the e-mail sent at 3:15 p.m., Ms. Cook referred to Ms. Paddio as "your majesty" and signed the communication

as "Your miss talladega college."  AF No. 21.2.  Among other things, Ms. Cook stated, "I hate this school" and "I am tired of TC."  AF No. 21.3.  She concluded the letter by stating, "And my voice will be heard."  AF No. 21.4.

Seven minutes later, at 3:22 p.m. on September 6, 2011, Ms. Cook sent Ms. Paddio another e-mail. AF No. 22.1.  The message had the subject line "Blessed and Highly Favored" and concluded with the following: "Nobody even knows about the letters I have been sending you. . . . Well . . . thats of (sic) I have a way of handling that because what I am saying is to (sic) big to be ignored."  AF No. 22.2.

Another seven minutes later, at 3:39 p.m. on September 6, 2011, Ms. Cook sent an e-mail from the tcjanedoe e-mail account to Cassandra Blassingame ("Ms. Blassingame"), the Vice-President of Institutional Advancement. AF No. 23.1.  In the anonymous e-mail Ms. Cook described Talladega as the "worst experience for me." AF No. 23.2.

## G.    Chief Walker Concludes Investigation

Chief Walker continued to investigate to determine the source of the threatening letters.  AF No. 24.1.  Because of the serious nature of the situation, on September 7, 2011, Chief Walker requested assistance from the Alabama Bureau of Investigation ("ABI") to help identify the person sending the threatening letters.  AF No. 24.2.

On September 8, 2011, ABI Special Agent Donald Worrell ("Special Agent Worrell") and ABI Sergeant Pat Price ("Sergeant Price") traveled to Talladega to assist in interviewing suspects.  AF No. 25.1.  An initial suspect (a male student) was identified as a person who had dropped off two of the letters in the campus mail room.  AF No. 25.2.  However, upon completion of the interviews, it was determined that he was not the author of the letters.  AF No. 25.3.

On the following day, September 9, 2011, Special Agent Worrell, Sergeant Price and Chief Walker interviewed Ms. Cook, and she admitted to writing the letters and e-mails.  AF No. 26.1.  Subsequently, Chief Walker reported the results of the investigation, including Ms. Cook's confession, to Mr. Hawkins.  AF No. 26.2.

## H.    Mr. Hawkins Decides To Expel Ms. Cook

Within the Handbook is a Student Code of Conduct (the "Code").  AF No. 27.1  Student conduct that is prohibited under the Code includes "threats, stalking, intimidation, harassment, and/or other conduct which threatens or endangers the health or safety of any person."  AF No. 27.2.  The Code also prohibits "harassing communications" and "all conduct that is inconsistent with the . . . best interest of Talladega College."  AF No. 27.3.

The Code provides for certain disciplinary measures and includes a series of procedures for discipline.  AF No. 28.1.  However, the Handbook also includes a

11

section which permits the President to impose sanctions outside of the standard disciplinary procedures outlined in the Code by way of an Executive Order.  AF No. 28.2.

With regard to illegal activity, the Executive Order provisions state as follows: "A student engaged in any conduct which may be a violation of a federal law, state law, city ordinance, or otherwise illegal activities regardless of whether the student has been officially charged, shall be viewed as a serious violation of College policy, and will result in immediate expulsion, termination and/or referral for criminal prosecution."  AF No. 28.3.

Based upon his own knowledge of the letters and e-mail messages sent by Ms. Cook and the information he received from Chief Walker, Mr. Hawkins made the decision to exercise his right under the Executive Order provisions to immediately expel Ms. Cook from Talladega.  AF No. 29.1.   Mr. Hawkins believed that Ms. Cook's conduct, which clearly violated college policy, may have been a violation of state law.  AF No. 29.2.  Although Ms. Cook's conduct may have been criminal, Ms. Paddio chose not to press criminal charges against Ms. Cook.  AF No. 31.   Mr. Hawkins issued Ms. Cook a letter of expulsion on September 9, 2011.  AF No. 29.3.

Chief Walker delivered to Ms. Cook the letter of expulsion and also issued her a Criminal Trespass Warning requiring her to vacate the college property.  AF No.

30.1. Ms. Cook retrieved her personal belongings and left the campus. AF No. 30.2. Because the semester had just begun, Ms. Cook had not paid any money toward her tuition as of the date of her expulsion. AF No. 30.3.

### I.    Ms. Cook Leaves Alabama

Ms. Cook now resides in the Atlanta, Georgia area where she works part time in a restaurant and is taking college classes online. AF No. 32.1. Ms. Cook does not want to return to Talladega as a student and does not want this court to grant her equitable relief of that nature in this case. AF No. 32.2.

### III.    STANDARD

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R . Civ. P. 56(c). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant. *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine

issue for trial.'"  *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986)).

## IV.   ANALYSIS

### A.   Counts One and Two

Counts one and two of Ms. Cook's amended complaint "seek[] extraordinary relief in the form of the issuance of a writ of prohibition, mandamus and/or a temporary and permanent injunction."  (Doc. 14 at 15).[4]  The gravaman of these counts is to have Ms. Cook's expulsion erased and allow her to return to Talladega as an enrolled student.  However, these counts have become moot by virtue of the passage of time since Ms. Cook's expulsion on September 9, 2011, her relocation to Atlanta, Georgia, and Ms. Cook's sworn testimony that she "do[es] not want to be enrolled at Talladega College any longer."  (Doc. 15-4 at 33 at 126-27).

This court's judicial authority is limited by the Constitution to resolution of "cases" and "controversies."  U.S. Const. Art. III, § 2.  "The controversy must be definite and concrete, touching the legal relations of parties having adverse legal

---

[4]  The page references for Doc. 14 correspond with the CM/ECF numbering system.

interests." *Brown & Root, Inc. v. Big Rock Corp.*, 383 F.2d 662, 665 (5th Cir. 1967).[5]

"[T]o satisfy Article III's standing requirements, a plaintiff must show (1) [she] has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 704, 145 L. Ed. 2d (2000) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992)); *see also Atlanta Gas Light Co. v. Aetna Cas. and Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995) (citations omitted) ("The party who invokes a federal court's authority must show, at an 'irreducible minimum,' that at the time the complaint [or claim] was filed, he has suffered some actual or threatened injury resulting from the defendant's conduct, that the injury fairly can be traced to the challenged action, and that the injury is likely to be redressed by favorable court disposition.").

"In addition, the controversy must be 'live' throughout the case; federal jurisdiction is not created by a previously existing dispute." *U.S. Fire Ins. Co. v.*

---

[5]   In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Caulkins Indiantown Citrus Co.*, 931 F.2d 744, 747 (11th Cir. 1991) (citing *Chiles v. Thornburgh*, 865 F.2d 1197, 1202 (11th Cir. 1989)).  "If the legal or factual basis for the cause of action no longer exists, the case may be moot. . . . [B]oth factual and legal developments [can] create an issue as to whether the entire case or portions of it are moot."  *Chiles*, 865 F.2d at 1203.

As part of the case or controversy constitutional assessment, the doctrine of mootness means that counts one and two of Ms. Cook's complaint against Talladega are constitutionally "dead" because Ms. Cook no longer lives in Alabama and expressly has disavowed having any desire to return to Talladega as an enrolled student.  Accordingly, counts one and two are due to be dismissed for lack of subject matter jurisdiction because they are moot.

## B.    Counts One, Two, and Four

Counts one, two, and four all involve purported constitutional violations arising out of Mr. Hawkins's decision to expel Ms. Cook from Talladega.  As an alternative to the mootness-based dismissal discussed above, counts one (relating to freedom of speech) and two (relating to due process) as well as count four (asserting due process violations brought pursuant to 42 U.S.C. § 1983) are due to be dismissed with prejudice because ,while they purport to present federal constitutional issues, the counts lack the requisite element of a deprivation committed under "color of state

16

law" or by state action.

As the Eleventh Circuit has clarified "[t]he First, Fifth, and Fourteenth Amendments 'do not apply to private parties unless those parties are engaged in an activity deemed to be 'state action.''" *Farese v. Scherer*, 342 F.3d 1223, 1233 n.13 (11th Cir. 2003) (quoting *NBC, Inc. v. Comms. Workers of Am.*, 860 F.2d 1022, 1024 (11th Cir. 1988)).  Similarly, "[l]ike the state-action requirement of the Fourteenth Amendment, the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Focus on the Family v. Pinellas Suncoast Transit Authority*, 344 F.3d 1263, 1277 (11th Cir. 2003) (internal quotation marks omitted) (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S. Ct. 977, 985, 143 L. Ed. 2d 130 (1999)).

Here, as Ms. Cook has alleged in her complaint (Doc. 8 ¶ 4 ("Defendant Talladega College is a private liberal arts college . . . .")) and as she has admitted on summary judgment, Talladega is a private college.  Further, the record lacks any evidence that Talladega or Mr. Hawkins has an association with a state, county, city, or some other governmental entity which might potentially trigger exposure to constitutional liability.

While Ms. Cook argues in opposing the Motion that the involvement of the ABI with respect to the investigation constitutes "a joint state and private action"

(Doc. 17 at 18-19), such a theory (assuming that it could even apply under these circumstances) misses the mark, because the purported "joint state and private" investigation is an action that is separate from Ms. Cook's complaint that centers upon the constitutional deprivation of being expelled from Talladega by Mr. Hawkins without a disciplinary hearing.

Additionally, the cases upon which Ms. Cook relies to show "joint state and private action" all involve constitutional challenges of a state law or procedure. *See Sniadach v. Family Finance Corp. of Bay View*, 395 U.S. 337, 338, 89 S. Ct. 1820, 1821, 23 L. Ed. 2d 349 (1969) ("Petitioner moved that the garnishment proceedings [arising under Wisconsin law] be dismissed for failure to satisfy the due process requirements of the Fourteenth Amendment."); *Mitchell v. W. T. Grant Co.*, 416 U.S. 600, 601, 94 S. Ct. 1895, 1897, 40 L. Ed. 2d 406 (1974) ("The issue is whether the sequestration [of property arising under Louisiana law] violated the Due Process Clause of the Fourteenth Amendment because it was ordered ex parte, without prior notice or opportunity for a hearing."); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601, 602, 95 S. Ct. 719, 721, 42 L. Ed. 2d 751 (1975) ("Whether these [garnishment] provisions [arising under Georgia law] satisfy the Due Process Clause of the Fourteenth Amendment is the issue before us in this case.").  Therefore, Ms. Cook has failed to provide any applicable legal support for her position.

Accordingly, because Mr. Hawkins's decision to expel Ms. Cook does not reflect any connection to under "color of state law" activities or state action, summary judgment in favor of Defendants on all constitutionally-related counts alleged in her amended complaint is appropriate.

### C.    Counts Three and Five

Counts three and five are both state law based.  While Ms. Cook has labeled count three as one for negligence, the allegations of the count are comparable to those of count five as they are premised upon the Handbook issued to Ms. Cook.  (*See* Doc. 8 ¶ 27 ("Plaintiff avers that pursuant to the Talladega College Student Handbook a contract was created between Talladega College and Plaintiff."); *id.* ¶ 28 ("Plaintiff avers that the Defendants Talladega College by and through Defendants Billy C. Hawkins in his official and individual capacities breached that contract with Plaintiff.")).  Accordingly, the court analyzes both of these counts under a breach of contract framework.

> To establish a breach-of-contract claim, a plaintiff must show " '(1) the existence of a valid contract binding the parties in the action, (2) his own performance under the contract, (3) the defendant's nonperformance, and (4) damages.' " *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (quoting *Southern Med. Health Sys., Inc. v. Vaughn*, 669 So. 2d 98, 99 (Ala. 1995) (citations omitted)).

*Ex parte Coleman,* 861 So. 2d 1080, 1085 (Ala. 2003).  Relatedly, "[t]he requisite

19

elements of . . . [a] contract[], generally, include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Strength v. Alabama Dep't of Finance*, 622 So. 2d 1283, 1289 (Ala. 1993) (citing *Mercer v. Davis & Berryman International, Inc.*, 834 F.2d 922 (11th Cir. 1987)).

In light of the above *prima facie* elements, Defendants are entitled to summary judgment on Ms. Cook's contractual claims for several different reasons.  First, the Handbook is not a binding contract under Alabama law because it lacks the aspects of an offer and acceptance and consideration.

Second, the Handbook contains language which expressly clarifies that the document is subject to revision at the discretion of Talladega.  Third, Ms. Cook has admitted on summary judgment that the Handbook was not intended to be a contract between her and Talladega.

Fourth, even if the Handbook were somehow construed to be a valid and binding contractual agreement, Ms. Cook has not shown how Talladega or Mr. Hawkins ever breached it.  More specifically, Ms. Cook has not demonstrated how her immediate expulsion was inappropriate or a violation of the Executive Order provisions of the Handbook in light of her admitting to engaging in harassing behavior, which Mr. Hawkins undisputedly viewed as being criminal in nature.

Ms. Cook also has not provided any evidence to support her contention (Doc.

17 at 15) that the Executive Order provisions were arbitrary changes made to the Handbook which she did not have notice of prior to her expulsion.  Finally, Ms. Cook incorrectly (and without citing to any authority) contends that "the trier of fact is the only entity that can ultimately make the determination of whether a contract, first exists in the expectations of the student . . . ."  (Doc. 17 at 25).

Thus, for all these reasons, Defendants are entitled to summary judgment on counts three and five of Ms. Cook's amended complaint.

V.    CONCLUSION

Accordingly, the Motion is due to be granted.  The court will enter a separate order.

DONE and ORDERED this the 1st day of November, 2012.

_____
VIRGINIA EMERSON HOPKINS
United States District Judge